CARROLL, CPIARLES, Associate Judge.
This is an appeal from a final decree in an equity suit in Pinellas County, in a companion case to appeal Galloway v. Musgrave, Fla.App.1963, 154 So.2d 846.
Flood’s Milk, Inc., as a stakeholder, filed this interpleader suit against appellants B. P. Galloway and John Holton and against the appellee D. L. Musgrave. The court granted interpleader and determined the rights of the defendants respectively in the fund and as to the milk base involved. In a full and informative final decree the able chancellor traced the history and course of the litigation, found the facts and determined the applicable law. The issues and questions involved on the appeal may best be stated by quoting the decree from which the appeal it taken, which is as follows:
“This cause is an action of inter-pleader filed by a milk distributor praying for final determination of a dispute existing between three of its producers as to ownership of a certain fund of money being held by the distributor arising from Plaintiff’s purchase of milk. Issue was joined upon counter-claims, cross-claims and replies thereto of the several defendants and all pleadings taken together made it apparent that the relief prayed for by Plaintiff would result automatically from adjudication of ownership of a certain milk base with Plaintiff, held at divers times by Defendants Mus-grave and Galloway and raised by pleadings of the parties defendant.
*853 “Upon final hearing, considering all testimony, exhibits and evidence presented, the following facts were found to be the basis of the dispute before this Court:
“Defendant Musgrave earned an 8.-183% milk base with his dairy herd in the year 1960, subsequently sold the said herd with its milk base to Defendant Galloway and accepted as part of the purchase price a promissory note secured by chattel mortgage encumbering the cattle sold and other security. On May 15, 1961, Defendant Musgrave filed his foreclosure suit upon that mortgage in the Thirteenth Circuit for Hillsborough County, alleging several defaults of Defendant Galloway including failure to pay money due upon the note and mortgage and sale of some of the mortgaged cattle without the mortgagee’s consent. Final Decree of foreclosure on the 133 remaining of the 460 animals sold by him in 1960 to Defendant B. P. Galloway was entered in favor of D. L. Musgrave on November 3, 1961. There was simultaneously litigated in the same Court a foreclosure suit by The First National Bank in St. Petersburg upon another herd of dairy cattle owned by Defendant Galloway and The First National Bank was also granted foreclosure decree on November 3, 1961.
“During the course of that litigation, the Court finding a commingling of the two herds making certain identity not possible, Mr. Musgrave, as assignee of the First National Bank mortgage as well as holder of his own mortgage took possession of all cattle owned by Defendant Galloway pursuant to Interim Order of Court dated August 1, 1961, and founded upon Chapter 699.09, Florida Statutes, 1959. [F.S.A.]. Thereupon Mr. Musgrave commenced selling milk from the two herds to Plaintiff, Hood’s Milk, Inc.
“About September 1, 1961, Defendant Musgrave began acquiring additional cattle and has given as his reasons therefor that milk production of the remnant of his herd security had drastically reduced in volume and that it was essential to produce additional milk during the November-January base earning period in order to avoid cancellation of the milk base. Thus, from September 1961 to the present, Mr. Musgrave sold increasingly greater amounts of milk to Plaintiff. At the November 14, 1961 foreclosure sale Mr. Musgrave bid on and purchased all cattle remaining of those originally sold by him to Mr. Galloway and Certificate of Title thereto issued by the Clerk of the Circuit Court for the Thirteenth Judicial Circuit for Hills-borough County is dated December 5, 1961. Mr. Musgrave continued selling milk from the herd which he purchased at foreclosure sale plus the above-described additional cattle acquired on or after September 1, 1961. Defendant Galloway redeemed the 72 animals subject to The First National Bank mortgage and on November 14, 1961 gave to Defendant Plolten a bill of sale purporting to sell the redeemed animals and a 2.874% milk base with Plaintiff. The animals remained with Defendant Galloway, who sold their milk to Plaintiff and Defendant Hol-ten, who had greater milk production than base, sold his surplus milk to Plaintiff, claiming right to Class I price under the 2.874% base mentioned in the Galloway bill of sale. Thus, from a time shortly after foreclosure sale all three defendants sold milk to the Plaintiff purportedly under the same milk base.
“It is uncontroverted that the mortgage, referring to a dairy herd or “milch cows,” does not specifically describe a milk base and the Final Decree of Foreclosure makes no reference to milk base. Defendant Musgrave’s position is that the milk base is an inseparable, incidental right of ownership of the herd which earned it, sub *854 ject to ultimate control only by the Florida Milk Commission. Defendant Galloway argues that it is a severable property right which he retained after foreclosure sale. . Defendant Holten claims under Defendant Galloway and takes only subject to whatever rights Mr. Galloway may have. The milk base referred to is a form of license which apparently greatly exceeds in value the actual market value of the herd which earns the base.
“Defendants Musgrave and Galloway represented by the same counsel who appeared as their attorneys of record in this cause, appeared before the Florida Milk Commission in public hearing on two occasions. As a result of the August 30, 1961 hearing a ruling was adopted by that agency declaring that ‘in this instant case (Musgrave v. Galloway) the initial base shall follow the custodian of this specified herd however that custodianship might be designated by the Court.’ The December 13, 1961 hearing resulted in an order or ruling of the Florida Milk Commission declaring Mr. Musgrave to be owner of the entire milk base as of the date of foreclosure sale.
“Thereupon Defendant Galloway sued in the Second Circuit to enjoin the Florida Milk Commission from carrying out its decision, joining as parties defendant the Administrator and members of the Commission but not D. L. Musgrave. That Court found the Florida Milk Commission to be without authority to make such an award, granted the injunction and declared that ‘the only way for (the dispute between D. L. Musgrave and B. P. Galloway) to be determined is by a proceeding in which the contesting parties, B. P. Galloway, D. L. Mus-grave and Flood’s Milk, Inc, are parties.’ Defendant Musgrave argues that the Florida Milk Commission, by reason of quasi-judicial powers of that agency granted by Chapters 501 and 120, Florida Statutes, 1961, did have the power to enter its December 13, 1961 order and that the same is a Final Order equal in dignity to that of a court of general jurisdiction of this State, that the same has not been appealed and is res judicata as to this-cause; or in the alternative the said order is at the least a valid and binding award resulting from a common law arbitration; and has prayed for this Court to declare the Final Decree-entered January 22, 1962 by the Circuit Court of the Second Judicial Circuit for Leon County to be a void decree as to any effect it may have upon his property rights, not having been made a party to that cause. Defendant Galloway stands upon the declaration of that Court and prays for a. final adjudication of ownership of the milk base in question and of the fund accumulated with Plaintiff, Hood’s-Milk, Inc., by this Court.
“From August 1, 1961 to the present time, because of this dispute, P.laintiff-Hood’s Milk, Inc., has paid to each of the parties defendant the lowest price payable in its plant, has retained' the differential between that paid and Class I price payable and now asks-this Court to instruct it as to payment-of that differential.
“Without making any finding or comment upon the validity or invalidity of the action of the Florida Milk Commission or that of any other court of this State, this Court finds that it does have jurisdiction of this cause,, of the parties hereto and the subject matter hereof and that it has the-power to make a final determination of the issues before it. To aid in the-preparation of this decree this Court ordered a conference with it by counsel for all parties to this cause an<J the same was held on the 8th day of March, 1962. At that time it was-stipulated by counsel that the sum of 50^ per gallon may be used by this Court as the cost of production of a-, gallon of milk in determining allocation. *855 of any funds held by Plaintiff, Hood’s Milk, Inc. It is, thereupon,
“Ordered, Adjudged and Decreed that:
“1. This Court has jurisdiction of this cause and of the parties hereto and of the subject matter hereof.
“2. This action for interpleader is well founded and was brought in accordance with law.
“3. Defendant, D. L. Musgrave is the rightful owner of the entire milk base with Hood’s Milk, Inc., here in issue and became the rightful owner hereof on the date of his re-acquisition of ownership of the remnant of the ■dairy herd which he sold in 1960 to Defendant, B. P. Galloway. The rights represented by a milk base are incidental to ownership of the dairy herd which earned the base and the lien ■of the mortgage extended to and in■cluded all such rights incidental to ownership of the tangible personal property ■described in the mortgage. The Certificate of Title issued by the Clerk •of the Circuit Court for the Thirteenth Judicial Circuit of the State of Florida bears the date of December 5, 1961 and that date is hereby declared to 'be the date upon which whatever rights .are represented by the entire milk base originally earned by D. L. Musgrave matured from a lien to ownership and became re-invested in Defendant, D. L. Musgrave.
“4. The sum of 50‡ per gallon having been stipulated to be the cost of production of a gallon of milk, the following respective rights of the parties are declared to exist in the fund held by Hood’s Milk, Inc., and Hood’s Milk, Inc. is hereby directed to pay out of that sum the following monies: * * * >’
The chancellor then proceeded to set out in his decree the amounts to be paid by Hood’s Milk, Inc., to the several defendants, and made this further provision as to Musgrave’s ownership of the milk base, viz.:
“D. From and after the 22nd day of March, 1962 the entire milk base heretofore declared to be the sole property of D. L. Musgrave shall not be burdened with any claims or deductions of any other party to this suit by reason of the subject matter or any claim asserted in this suit and Hood’s Milk, Inc., shall thereupon and thereafter pay to D. L. Musgrave the highest class price payable for all milk produced by him.’’
The above clearly states the matters submitted for determination and the disposition thereof, and our consideration of the briefs and argument in light of the record has failed to convince us that any reversible error has been made to appear.
Affirmed.
KANNER, Acting C. J., and ALLEN, J., concur.